UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| MOHAMED KHALID SNOUSI HAMZA, | § § § | |
| *Plaintiff,* | § § | |
| v. | § § | Civil Action No. 3:25-CV-01710-X |
| MARKWAYNE MULLIN, *in his official capacity as the Secretary of the Department of Homeland Security,*[1] | § § § § | |
| *Defendant.* | § § § | |

## MEMORANDUM OPINION AND ORDER

Mohamed Khalid Snousi Hamaza (Hamza), a Libyan national, applied for asylum in 2022 and completed his biometrics appointment in early 2023. Yet U.S. Citizenship and Immigration Services (USCIS) hasn't adjudicated his application. He asks this Court to compel the Secretary of the Department of Homeland Security (the Secretary) to accelerate adjudication of his asylum application. The Secretary moved to dismiss. (Doc. 10.) Because this Court lacks jurisdiction, the Court **GRANTS** the Secretary's motion to dismiss (Doc. 10) and **DISMISSES WITHOUT PREJUDICE** Hamza's petition for writ of mandamus (Doc. 1).

---

[1] Under Federal Rule of Civil Procedure 25(d), "[a]n action does not abate when a public officer who is a party in an official capacity . . . ceases to hold office while the action is pending. The officer's successor is automatically substituted as a party." Congratulations on the Senate confirmation, Mr. Secretary. But now you've been sued.

## I. Background

Hamza, a Libyan national, initially entered the United States with an F-2 Visa, which was changed to an F-1 Visa when he enrolled in Wayne State University. He moved to Texas and enrolled in the University of North Texas, where after graduation in 2022, he filed a Form I-589 application for asylum with USCIS. He completed his necessary biometric examination in 2023, but USCIS has not interviewed him or further adjudicated his application. In fear of potential removal, Hamza petitioned for a writ of mandamus to compel Kristi Noem, then-Secretary of the Department of Homeland Security, to direct USCIS to expedite his asylum application adjudication. The Secretary moved to dismiss under Federal Rule 12(b)(1) and 12(b)(6).

## II. Legal Standard

Courts dismiss actions for lack of subject-matter jurisdiction under Federal Rule of Civil Procedure 12(b)(1). When a 12(b)(1) motion is filed, a court must inquire "into its own jurisdiction."[2]

## III. Analysis

"Federal courts are courts of limited jurisdiction having only the authority endowed by the Constitution and that conferred by Congress."[3] "Without jurisdiction the court cannot proceed at all in any cause . . . And when it ceases to exist, the only

---

[2] *Menchaca v. Chrysler Credit Corp.*, 613 F.2d 507, 511 (5th Cir. 1980).

[3] *Scarlott v. Nissan N. Am., Inc.*, 771 F.3d 883, 887 (5th Cir. 2014).

function remaining to the court is that of announcing the fact and dismissing the cause."[4]

Hamza seeks to establish jurisdiction through the Immigration & Naturalization Act (INA), the Administrative Procedures Act (APA), and 28 U.S.C. § 1361 (the "Mandamus Act"). None support jurisdiction over this matter.

## A.    The INA

Under the INA, Congress has expressly stripped federal courts of judicial review over "any other decision or action of the Attorney General or the Secretary of Homeland Security the authority for which is specified under this subchapter to be in the discretion of the Attorney General or the Secretary of Homeland Security."[5]

Because the timing of asylum adjudication falls within the discretion of the Secretary of Homeland Security, the INA cannot confer jurisdiction over this matter.

To be sure, the INA states that "the initial interview or hearing on the asylum application shall commence not later than 45 days after the date an application is filed" and the "final administrative adjudication of the asylum application . . . shall be completed within 180 days after the application is filed."[6]  Even so, that is subject to "the absence of exceptional circumstances."[7]  Tellingly, the INA provides no guidance for reviewing courts to determine whether a circumstance is exceptional. And the Supreme Court has stated that "even where Congress has not affirmatively

---

[4] *Ex parte McCardle*, 7 Wall. 506, 514, 19 L.Ed. 264 (1868) (cleaned up).

[5] 8 U.S.C. § 1252(a)(2)(B)(ii).

[6] 8 U.S.C. §§ 1158(d)(5)(A)(ii), (iii).

[7] *Id.*

3

precluded review, review is not to be had if the statute is drawn so that a court would have no meaningful standard against which to judge the agency's exercise of discretion."[8]

Moreover, Congress failed to provide any penalties for USCIS if it should fail to schedule an interview or adjudicate an application within the stated timeframes. The Supreme Court has also explained that "the failure of Congress to specify a consequence for noncompliance with [a timing requirement] implies that Congress intended the responsible officials administering the Act to have discretion."[9]

The statute further confirms the absence of consequences for noncompliance. Section 1158(d)(7) states that "[n]othing in this subsection shall be construed to create any substantive or procedural right or benefit that is legally enforceable by any party against the United States or its agencies or officers or any other person."[10]

Taken together, these provisions commit the pace of asylum application adjudication to the discretion of the Secretary of Homeland Security under the INA.

Like other courts,[11] the Court concludes it lacks jurisdiction under the INA to adjudicate Hamza's claim.[12]

---

[8] *Heckler v. Chaney*, 470 U.S. 821, 830 (1985).

[9] *United States v. Jones Daniel Good Real Prop.*, 510 U.S. 43, 64–65 (1993).

[10] 8 U.S.C. § 1158(d)(7).

[11] *See, e.g.*, *Kizilyildirim v. Duam*, 2024 WL 1722277, at *6 (S.D. Tex. Mar. 29, 2024); *Yilmaz v. Jaddou*, 2023 WL 7389848, at *8 (C.D. Cal. Oct. 4, 2024). *Cf. Ayvali v. United States*, 2024 WL 1319751, at *3 (W.D. Tex. Mar. 27, 2024).

[12] This broad discretion also fits neatly within the Executive Branch's inherent authority over immigration as a species of foreign affairs. *See* John Locke, *Second Treatise of Government* ch. XII at §§ 146–148 (1690) ("This therefore contains the power of war and peace, leagues and alliances, and all the transactions, with all persons and communities without the commonwealth, and may be called federative. . . . These two powers, executive and federative, though they be really distinct in themselves, . . . yet they are always almost united . . . They are hardly to be separated, and placed at

## B.    The APA

The Secretary of Homeland Security's discretion under the INA similarly forecloses judicial review under the APA.  To be sure, "the APA establishes a basic presumption of judicial review for one suffering legal wrong because of agency action."[13]  And where agency action is "unlawfully withheld or unreasonably delayed," the court "shall compel agency action."[14]

But "that presumption can be rebutted by a showing that the relevant statute precludes review, § 701(a)(1), or that the agency action is committed to agency discretion by law, § 701(a)(2)."[15]  The Supreme Court has limited those exceptions to "those rare circumstances where the relevant statute is drawn so that a court would have no meaningful standard against which to judge the agency's exercise of

the same time, in hands of distinct persons: for both of them requiring the force of the society for their exercise, it is almost impracticable to place the force of the common wealth in distinct, and not subordinate hands; or that the executive and federative power should be placed in persons, that might act separately, whereby the force of the public would be under different commands." (cleaned up)); 1 Emer De Vattel, *The Law of Nations* ch. XIX, § 230, at 170 (Joseph Chitty ed., T. & J.W. Johnson & Co. 1844) (1758) ("The sovereign may forbid the entrance of his territory either to foreigners in general or in particular cases, or to certain persons or for certain particular purposes, according as he may think it advantageous to the state.  There is nothing in all this that does not flow from the rights of domain and sovereignty." (cleaned up)); 1 William Blackstone, *Commentaries on the Laws of England* 251–52 (1765) ("By the law of nations no member of one society has a right to intrude into another. And therefore it is left in the power of all states to take such measures about the admission of strangers as they think convenient. . . [Once admitted] they are under the king's protection; though liable to be sent home whenever the king sees occasion." (cleaned up)).  The Founders Americanized these principles by vesting the president with the executive power (which includes the federative power over foreign affairs).  U.S. CONST. art. II., § 1.  But they also gave express power to Congress to establish a uniform rule for naturalization.  U.S. CONST. art. I, § 8.  As a result, we courts will take seriously the executive branch's failure to follow Congressional deadlines when Congress removes the president's discretion and spells out the consequences for that failure.  Absent that, we must abide by the executive's prerogative over foreign affairs.

[13] *Dep't of Homeland Sec. v. Regents of the Univ. of Cal.*, 591 U.S. 1, 16 (2020) (cleaned up).

[14] 5 U.S.C. § 706(1).

[15] *Regents*, 591 U.S at 17 (cleaned up).

5

discretion."[16] And as stated above, 1158(d)(5)(A)(ii)–(iii) has "no meaningful standard against which to judge the agency's exercise of discretion."[17]

So the APA does not confer jurisdiction over this matter.

### C.    The Mandamus Act

Finally, the Mandamus Act provides no relief either.  "Mandamus may only issue when (1) the plaintiff has a clear right to relief, (2) the defendant has a clear duty to act, and (3) no other adequate remedy exists."[18]

"It is beyond serious dispute that mandamus pursuant to § 1361 is unavailable to compel compliance with a statutory obligation when the underlying statute expressly disclaims a private right of action."[19]  Because § 1158(d) expressly disclaims a private right of action, this Court has no jurisdiction over Hamza's mandamus claim.

Accordingly, this Court lacks jurisdiction and the case must be dismissed.

### IV. Conclusion

For the foregoing reasons, the Court **GRANTS** the Secretary's motion to dismiss and **DISMISSES WITHOUT PREJUDICE** Hamza's petition for a writ of mandamus.

**IT IS SO ORDERED** this 24th day of March, 2026.

---

[16] *Weyerhaeuser Co. v. U.S. Fish & Wildlife Serv.*, 586 U.S. 9, 23 (2018) (cleaned up).

[17] *Id.*

[18] *Wolcott v. Sebelius*, 635 F.3d 757, 768 (5th Cir. 2011) (cleaned up).

[19] *Topuz v. Daum*, 2024 WL 4282091, at *3 (S.D. Tex. Sept. 24, 2024) (cleaned up).

BRANTLEY STARR
UNITED STATES DISTRICT JUDGE

7